Smith's Administrator *v.* Wood.

ADMINISTRATOR WITH THE WILL ANNEXED OF ASA SMITH, DECEASED,

*v.*

ABRAHAM T. WOOD et al.

1. An assignee, under the statute regulating assignments for the benefit of creditors, may, in virtue of the power conferred upon him by the assignment, avoid alienations made by his assignor in fraud of his creditors, if the property so alienated is required for the payment of debts exhibited to the assignee.

2. Every material fact which it is necessary for a complainant to prove to establish his right to the relief he asks, must be alleged with reasonable fullness and particularity.

3. A suitor who seeks relief on the ground of fraud must state the facts which constitute the fraud, so that the person against whom relief is sought may know what he is called upon to answer.

4. Courts of law and courts of equity have concurrent jurisdiction over alienations made in fraud of creditors.

5. Where there is both a legal and equitable remedy for the same cause of action, if the legal remedy is barred by lapse of time the equitable remedy will also be held to be barred.

On demurrer.

*Mr. Lewis Van Blarcom,* for demurrants.

*Mr. Clarence Linn,* for complainant.

VAN FLEET, V. C.

The following statement presents all the material facts on which the complainant rests his right to relief in this case : The complainant is a judgment creditor of Abraham T. Wood. The debt on which his judgment is founded was contracted prior to the 18th of September, 1877. He has exhausted his remedy at law, the execution issued on his judgment having been returned unsatisfied, no property having been found on which a levy could be made. Wood, on the date last named, executed a chattel

mortgage to his wife on "all the stock, crops, poultry, farming implements and utensils" which were then on a farm belonging to him, situated in the township of Wantage, Sussex county, to secure the payment of $1,800, on the 1st day of April, 1878. Wood was not indebted to his wife, the mortgage executed to her being voluntary and made with intent to defraud his creditors. Mrs. Wood, on the 5th of June, 1878, and a few days before two judgments were to be entered against her husband in suits brought subsequent to the execution of her mortgage, sold, under a power of sale contained in her mortgage, all the mortgaged chattels at public sale, and purchased them herself. On the 18th of June, 1878, Wood made an assignment to Ira D. Hoffman of all his property for the equal benefit of his creditors. Wood's object in making the assignment, it is alleged, was to defraud his creditors and to protect and preserve his property to his own use. Hoffman assumed the duties imposed upon him by the assignment and subsequently sold and conveyed the farm, which passed to him under the assignment, to his assignor's wife. This sale, it is alleged on information and belief, was not made in good faith nor for an adequate or valuable consideration. The assignee had so far proceeded in the execution of his duties as to file his final account in the orphans court of the county of Sussex, where the same was pending, on exceptions, when the bill in this case was filed. Debts to the amount of $7,365.17 have been exhibited to the assignee under oath. This includes $4,324.05 exhibited by the assignor's wife, the whole of which the complainant charges to be false and fraudulent. The balance shown by the assignee's account to be in his hands for distribution among the creditors who have proved their debts is $61.64. The exceptions taken to the assignee's account seek to charge him with the value of the chattels which Mrs. Wood claims to have acquired under her mortgage, and also with money, notes and other personal property, of the value of $700. The debt on which the complainant's judgment is founded was not exhibited to the assignee under oath, nor has the judgment been so exhibited or otherwise. The complainant has procured the farm which Wood owned at the time he made the assignment, to

Smith's Administrator v. Wood.

be sold under his judgment and to be conveyed to himself.   On these facts and allegations the complainant asks that the chattel mortgage made to Mrs. Wood, and the sale made thereunder, be set aside ; that the personal property which the mortgage covered, " or any which has been substituted in or procured to supply the place of it," may be applied in satisfaction of his judgment, and also that the deed of assignment to Hoffman, as well as the deed made by Hoffman to Mrs. Wood, be set aside, and that the title to the land conveyed thereby be declared to be in the complainant, and that the defendants be decreed to deliver the possession thereof to the complainant.   The defendants demur for want of equity.

The important question raised by the demurrer is whether the bill states sufficient facts, if undenied or undisputed, to entitle the complainant to a decree nullifying the assignment.   If the assignment is valid, there can be no doubt that all the property in controversy, as well that to which the assignor held the title at the time he made the assignment, as that which he had previously conveyed and transferred in fraud of his creditors, passed, by the assignment, to his assignee, and that his assignee is liable to answer for its value to such of his creditors as have made a proper exhibition of their claims.   It is now authoritatively settled in this state that an assignee, under our statute regulating assignments for the benefit of creditors, may, in virtue of the power conferred upon him by the assignment, avoid conveyances and transfers made by his assignor in fraud of his creditors, if the property so alienated is required for the payment of debts exhibited to the assignee.   As to such debts the principle is established that the assignee stands in the place of the creditors, with all their rights and equities.   *Pillsbury* .v. *Kingon, 6 Stew. Eq. 287.*   The possession of this power imposes a duty.   The assignee is bound to exercise it for the benefit of the creditors, or answer for any loss which they may sustain by his neglect of duty. Mr. Justice Potts, in *Garretson* v. *Brown, 2 Dutch. 425, 440,* said that any fraudulent disposition which the assignor may have made of his property is liable to be avoided by his assignee. His assignee is but the trustee of creditors, who may compel him

to perform his duty. This states the principle which lies at the foundation of the decision in *Pillsbury* v. *Kingon.* It is clear, therefore, that if the assignment is valid, the title to the property in controversy passed under it to the assignee, and that he must, in the proper discharge of his duty, first apply it to the discharge of the debts which have been exhibited to him in conformity to the statute. The rights of the creditors who have made a proper exhibition of their claims are paramount. They must be paid in full before a creditor who has not exhibited his claim can have anything out of the property accounted for by the assignee. Such is the plain direction of the statute. *Rev. p. 40 § 20.* If the assignee realizes, from the property assigned, more than is sufficient to pay in full all the debts proved, a creditor who has not proved his debt has a right to have his debt paid out of the surplus. And so, if a creditor, who has not proved his debt, finds property subsequent to the distribution, for which the assignee has not accounted, he will have a right to participate in the distribution of its proceeds. These are rights which are conferred by the assignment.

But the complainant in this case does not seek to establish a right to relief through the assignment; on the contrary, he denounces the assignment as a fraud, and asks that it may be set aside, and that relief be administered to him as though it had never been made. The fraud charged against the assignment is expressed as follows :

" And your orator is informed and believes, and expressly charges the truth to be, that said assignment by said Abraham T. Wood to Ira D. Hoffman, so far from being for the benefit of the creditors of said Wood, was made with the intent and purpose, on the part of said Wood, of hindering, delaying and defeating his creditors in the collection of their debts, and of protecting and preserving his property to his own use."

This, it is obvious, is entirely too general. No rule of equity pleading is better settled than that which declares that every material fact which it is necessary for a complainant to prove to establish his right to the relief he asks must be alleged in the premises of his bill, with reasonable fullness and particularity.

*Story's Eq. Pl. § 28; Rorback v. Dorsheimer, 10 C. E. Gr. 516.*
A suitor who seeks relief on the ground of fraud must do something more than make a general charge of fraud. He must state the facts which constitute the fraud, so that the persons against whom relief is sought may be afforded a full opportunity, not only to deny or explain the facts charged, but to disprove them. He has a right to know in advance just what he will be required to meet. *Small v. Boudinot, 1 Stock. 381; Gilbert v. Lewis, 1 De G., J. & S. 38.* Now, the only act of fraud charged against the assignment with the requisite degree of certainty, is that the assignor, in the list of his creditors annexed to the assignment, put down the name of his wife as a creditor for a large sum, when in truth she was not a creditor and had no claim. But why should that nullify the assignment? It was a misrepresentation, it is true, and might, under some circumstances, be so used as to give some aid to a person wicked enough to attempt to establish a false claim by a false oath, but putting the wife's name in the list of creditors, in this case, did not make her a creditor nor relieve her from the necessity of making independent proof of her debt. She could not use her husband's admission as evidence against the other creditors, nor would his admission give her the least aid in establishing the fact that she was a creditor. She was bound to prove that fact by evidence entirely independent of anything appearing on the face of the assignment. So that it would appear to be manifest that if there was a misrepresentation in this respect, it was one that was entirely harmless, and that although it may have been made with a fraudulent design, still it was utterly impotent as a means to that end. In my judgment, no case is made by the bill against the validity of the assignment.

The bill also charges that the sale made by the assignee of the lands of the assignor was fraudulent, but the charge is made in language so meagre and vague as to give no indication whatever what facts will be put in evidence to establish the truth of the charge. The bill simply says that if a sale of the lands has been made, it was not made in good faith, nor for an adequate or valuable consideration, but as a step in the execution of a scheme

which the assignor had contrived for the purpose of defrauding his creditors. This averment is subject to almost every objection which it is possible to urge against an imperfect pleading.

The bill unquestionably avers sufficient facts, with the requisite degree of particularity, to show that the mortgage executed to Mrs. Wood was fraudulent as to creditors. But, as already remarked, if the mortgage is fraudulent as to creditors, the assignee has a paramount right to the chattels pledged by it. The complainant can, in no event, and under no circumstances, legally claim any part of their proceeds until such of the creditors as have exhibited claims to the assignee are fully paid. The aggregate of the claims which are undisputed, excluding those which are impugned as false, exceeds, according to the bill, $3,000. The bill does not state the value of the chattels which were mortgaged; it says, however, that in September, 1877, they consisted of the stock, crops and poultry on a farm of about one hundred and seven acres, and the implements and utensils used in its cultivation. This was over nine years ago. The probabilities are that very few of them are now in existence, and that those which still remain are of insignificant value, so that a decree invalidating the mortgage would give the complainant nothing. Courts of equity sit to administer justice in matters of substantial interest, not to foster a spirit of vexatious litigation.

But there is another reason why the complainant cannot maintain an action to invalidate this mortgage. His right of action is barred. The mortgage was executed on the 18th of September, 1877, and the bill in this case was not filed until the 28th of January, 1886, so that a period of more than eight years elapsed between the time when the alleged fraud was perpetrated, and the date of the institution of this suit. There is no claim that the fraud was concealed, or that its existence has recently been discovered. The bill does not aver that the person whom the complainant represents in this action did not have full knowledge that a fraud had been committed against him immediately after it was committed. Courts of law and courts of equity have concurrent jurisdiction over alienations and pledges of chattels made in fraud of creditors. *Mulford* v. *Peterson, 6 Vr. 127, 133.*

The complainant's testator would have had a right, if no assign-ment had been made, to have brought an action at law at any time within six years after the chattels in controversy were sold under the mortgage, to test Mrs. Wood's title to them, and if he could have shown that her mortgage was fraudulent as to credit-ors, he would have been entitled to recover the chattels or their value. *Owen* v. *Arvis, 2 Dutch. 22.* There can be no doubt that the fraud alleged is one over which the jurisdiction of the common law courts is just as perfect and complete as the juris-diction of this court. This being so, it is clear that if the com-plainant's right of action at law was barred by the statute of limitations when this action was brought, he has no right of action in equity, for no principle governing the right to remedies is better settled than that which declares that where there is both a legal and equitable remedy for the same cause of action, if the legal remedy has become barred by lapse of time, the equitable remedy will also, except under special circumstances, be held to be barred. *Somerset Bank* v. *Veghte, 15 Stew. Eq. 39 ; Kane* v. *Bloodgood, 7 Johns. Ch. 90; Smith* v. *Clay, Amb. 645 ; S. C., 3 Bro. C. C. 639, note.*

The demurrer must be sustained, with costs.